# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| JAMES DOUGLAS GRAHAM | CIVIL ACTION NO. 18-1654 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| OCTAPHARMA PLASMA, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

# RULING

This is a personal injury lawsuit brought by James Douglas Graham ("Graham") against Defendant Octa-Pharma Plasma, Inc. ("Octa-Pharma"). On February 7, 2020, Octa-Pharma filed a Motion for Summary Judgment [Doc. No. 30]. Octa-Pharma moves the Court grant judgment in its favor as a matter of law because Graham lacks sufficient evidence to raise a genuine issue of material fact for trial on causation. Graham opposes summary judgment. [Doc. No. 38]. Octa-Pharma has filed a reply. [Doc. No. 40].

For the following reasons, Octa-Pharma's Motion for Summary Judgment is GRANTED, and Graham's claims are DISMISSED WITH PREJUDICE.

## I.    FACTS

On August 28, 2017, Graham donated plasma at Octa-Pharma's Monroe, Louisiana center. Graham frequently donated plasma, estimating he had done so approximately 250 times. On this date, he claims that the phlebotomist missed his vein several times trying to perform venipuncture on his right arm. At some point, Graham contends that he suffered excruciating pain causing him to scream out. Graham did not leave, however, but remained at the center and completed his

plasma donation.

Two days after his donation, on August 30, 2017, Graham returned to Octa-Pharma to complain of a hematoma and numbness and tingling in his arm.

The following day, August 31, 2017, Graham saw a health care practitioner for the first time. Graham went to the Forsythe Family Medical Clinic where he was seen by Angela Hamby, an Advanced Practice Registered Nurse ("APRN"). He complained of pain and loss of use of his right arm.

On or about September 28, 2017, Hamby referred Graham to occupational therapy, but he did not begin occupational therapy until November 28, 2017, two months later. He was discharged from occupational therapy in January 31, 2018, but still had complaints of pain in his right hand and elbow, as well as numbness from his elbow down to the last two digits of his right hand.

Hamby referred Graham to other practitioners because Graham's right arm complaints were "out of [her] scope." [Doc. No. 30-8, November 13, 2019 Deposition of Angela Hamby, N.P, pp. 16]. Hamby is not qualified to make any determination as to whether or not Graham has nerve damage. *Id.* at pp. 24-25. Hamby made no diagnosis of Graham's injury. *Id.* at pp. 22-23. Hamby does not know what, if any, of Graham's nerves were damaged and has "no opinion" as to what nerves were damaged. *Id.* at p. 24. Instead, Hamby would ultimately defer to the neurologist who treated Graham as to whether or not Graham's injuries were caused by the plasma donation. *Id.* at pp. 24-25, 40-41, 42, 44, 50-51, 63, 64-65, 79.

On October 1, 2018, more than a year after the alleged incident, Graham saw neurologist, Dr. Vijayakumar Javalkar at Ochsner-LSU Shreveport. [Doc. No. 30-9, November 13, 2019 Deposition of Dr. Vijayakumar Javalkar]. Dr. Javalkar is a board-certified general neurologist, with a specialty certification in vascular neurology. Dr. Javalkar also serves as an Assistant

Professor of Neurology.

Dr. Javalkar noted that Graham had impaired sensation in the medial aspect of his right forearm, atrophy of the muscles in both Graham's right and left hand, as well as muscle wasting in the muscles in both of Graham's forearms. *Id.* at pp. 25, & 77. Dr. Javalkar's initial possible diagnoses of Graham's injury were neuropathy, cervical myelopathy, and ALS (Lou Gehrig's disease). *Id.* at pp. 62-63. He did not include venipuncture in his differential diagnoses because there was no indication to support that possibility. *Id.* at pp. 63-64. He ordered an electrodiagnostic study on Graham, which was conducted on November 5, 2018.

Despite Dr. Javalkar's request for follow-up visits, including further diagnostic testing, Graham never went back to see Dr. Javalkar and has sought no further treatment or diagnosis of his alleged nerve injury. Dr. Javalkar testified that the intense pain described by Graham at the time of the venipuncture is consistent with acute damage to his median nerve, but he cannot determine what has caused Graham's symptoms and whether Graham had traumatic neuropathy– like that from a venipuncture. *Id.* at pp. 81. According to Dr. Javalkar, the diffuse atrophy he saw in Graham would not typically be seen from acute trauma like a needle stick, but more typically there would be more isolated symptoms if neuropathy was caused by a needle stick. *Id.* at pp. 25-26. According to Dr. Javalkar, Graham not only had diffuse atrophy of multiple muscles, but he also had indications that at least two nerves were affected in his right arm, the median nerve and the ulnar nerve. *Id.* at pp. 25 & 77. This caused Dr. Javalkar to be unsure and unable to conclude that the August 28, 2017 venipuncture caused Graham's injuries. *Id.* at pp. 25-26 & 77. Dr. Javalkar also does not know what caused the wasting of the small muscles in Graham's right hand. *Id.* at pp. 60-61.

Although Dr. Javalkar offered Graham a differential diagnosis, which were the multiple possible causes of Graham's symptoms, none of those potential diagnoses included venipuncture.

Instead, Dr. Javalkar's differential diagnoses included cervical myelopathy, compression of the spinal cord, ALS, a spinal cord disease, and general neuropathy. *Id.* at pp. 62-63. According to Dr. Javalkar, diabetes could have caused at least some of Graham's symptoms. *Id.* at pp. 29, 36 & 44.

Prior to the August 28, 2017 plasma donation, Graham had a number of health conditions and diagnoses: sciatica, cervical myelopathy, degenerative disc disease in his thoracic and lumbar spine, diabetes, and had complaints of right shoulder pain and mid-back pain from a motorcycle wreck. Additionally, Graham had prior diagnoses of mental conditions, including depression, schizophrenia, and dementia.

Graham relies on an expert report from Registered Nurse Mark E. Fuller, who opines:

> After thoroughly reviewing the afore mentioned documents, it is my professional opinion that James Douglas Graham did in fact suffer a severe and debilitating nerve injury in the right upper extremity due to the negligence of the Octapharma employee, Paula Hillard, who performed his venipuncture on August 28, 2017. . . .Mr. Graham's description of symptoms including but not limited to severe pain, weakness, numbness, tingling, progressive loss of function, and muscle wasting are consistent with a severe nerve injury caused by improper venipuncture technique well outside the preferred, safest area for venous access.

[Doc. No. 30-15, Fuller Expert Report]. However, Fuller was subsequently deposed and admitted as follows:

- He could not rule out cervical nerve compression as the cause for Graham's symptoms;

- Fuller did not rule out any other cause for Graham's symptoms;

- Fuller's opinion as to the extent of Graham's injury is "a guess" and "speculation";

- Fuller has "no idea" if the method he used to make his determination as to the cause of Graham's symptoms is accepted and used in peer review scientific or medical

4

> literature, and has reviewed nothing that has;

- Fuller does "not have an opinion as to what nerve was allegedly injured during the plasma donation;

- Fuller is "not giving an opinion as to the diagnosis of Mr. Graham" because he "can't diagnose.";

- A neurologist would be "more qualified" than he to make the determination as to the cause of Graham's symptoms;

- Fuller never attended medical school, is not a doctor, is not a neurologist, does not specialize in vascular neurology, and is not an expert in neurology;

- Fuller is not qualified to perform or read a nerve conduction study, has never performed one, has no experience in evaluating nerve damage, is not qualified to diagnose a nerve injury, has never provided any diagnosis for any patient related to whether or not they have nerve damage, is not qualified to make any prognosis for nerve damage, and is not qualified to determine what could be done to correct nerve damage;

- Fuller is not a certified phlebotomist, has never worked in a plasma donation clinic, has never performed venipuncture on a patient for the purpose of retrieving plasma, has never been trained to perform plasma donation on a donor, has never trained anyone to perform plasma donation, is not familiar with the procedures that are required for performing a plasma donation, is not familiar with the equipment that is used during plasma donation, and cannot describe any process on how to donate plasma.

*See* [Doc. No. 30-16, Fuller Depo., pp. 32-38, 52-58, 60-66, 75-77, & 90].

On November 13, 2018, Graham filed a Petition in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, asserting a claim of negligence against Octa-Pharma and "Paula," the phlebotomist who performed his venipuncture. [Doc. No. 1-2]. He seeks to recover damages. On December 28, 2018, Octa-Pharma removed the case to this Court, where it has proceeded since.

Under the Court's Scheduling Order, discovery is closed, and on February 7, 2020, Octa-Pharma filed the instant motion, along with motions in limine. Octa-Pharma specifically filed a Motion in Limine to Exclude the Testimony of Mark E. Fuller, III [Doc. No. 31]. Graham did

5

not oppose that motion.

The Motion for Summary Judgment is fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party."

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

### B. Causation in a Personal Injury Suit

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427 (1996); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). No party disputes that Louisiana applies to this negligence case in which a Louisiana domiciliary was allegedly injured in Monroe, Louisiana, by the employee of an entity doing business here.

Under Louisiana law,

> [i]n a personal injury suit [a] plaintiff bears the burden of proving a causal relation between the injury sustained and the accident which caused the injury. *American Motorist Insurance Co. v. American Rent–All, Inc.,* 579 So.2d 429 (La.1991); *Aucoin v. State Farm Mut. Auto. Ins. Co.,* 505 So.2d 993 (La. App. 3d Cir.1987); *Richard v. Walgreen's Louisiana Co.,* 476 So.2d 1150 (La. App. 3d Cir.1985). Plaintiff must prove causation by a preponderance of the evidence. *Morris v. Orleans Parish School Bd.,* 553 So.2d 427 (La. 1989). The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved **through medical testimony** that it is more probable than not that the subsequent injuries were caused by the accident. *Mart v. Hill,* 505 So.2d 1120 (La. 1987); *Villavaso v. State Farm Mut. Auto. Ins. Co.,* 424 So.2d 536 (La. App. 4th Cir. 1982).

*Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So. 2d 757, 759 (emphasis added).

The law recognizes a presumption establishing this causal connection between an injury plaintiff suffered and an accident "if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." *Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991) (quoting *Lukas v. Insurance Company of North America,* 342 So.2d 591 (La. 1977) (internal quotation marks omitted). Even if the presumption applies, Graham is still required to provide "medical evidence establishing a causal connection between [Graham's] medical condition and the accident." *Vargas v. Lee*, 317 F.3d 498, 502 n.3 (5th Cir. 2003).

In this case, the Court finds that Graham is not entitled to application of the *Housley* presumption. Graham cannot meet his first showing under *Housley*—that he was in good health prior to the August 28, 2017 plasma donation. To the contrary, the record establishes that prior to the donation, Graham had been diagnosed with diabetes, he was told he had cervical myelopathy, and he suffered from sciatica, pain and numbness in his mid-back, and pain in his right shoulder. Under these circumstances, the presumption does not apply. *See Miller v. Tulane Univ. Hosp.*, 2009-1740 (La. App. 4 Cir. 5/12/10); 38 So.3d 1142, 1147 (Plaintiff's "inability to establish even the first element required under *Housley* is fatal to [his] reliance on its presumption to prove medical causation.").

The Court then turns to whether Graham can otherwise establish causation. Albeit in a separate motion, Octa-Pharma has moved to exclude the expert opinion of Fuller, a registered nurse, as to causation. Graham does not oppose that motion. Accordingly, it is conceded that Fuller cannot provide the necessary link between the August 28, 2017 plasma donation and

Graham's alleged nerve damage. The Court agrees that Fuller, while no doubt a qualified medical professional, is not qualified to provide the necessary causal link given Graham's prior diagnoses and the complex nature of his alleged nerve damage.

The Court has therefore considered whether the link is otherwise provided through the testimony of Hamby and Dr. Javalkar. The Court finds that it is not. Hamby admits that she has not given Graham a diagnosis and that she would defer to the neurologist. The neurologist, Dr. Javalkar, however, also cannot state that Graham's nerve damage was more probably than not caused by the August 28, 2017 venipuncture. Dr. Javalkar testified in his deposition that Graham has bilateral atrophy of multiple muscles in both arms, not just the right arm, and he has indications that both the median and ulnar nerves in his right arm have been affected. [Doc. No. 30-9, Dr. Javalkar Depo., pp. 25 & 77]. He offered only differential diagnoses from his one visit with Graham, and none of those diagnoses included the venipuncture. While he said the pain Graham described was consistent with damage to the median nerve, that testimony is insufficient to meet the standard required. Accordingly, Octa-Pharma is entitled to summary judgment on Graham's claims.

## III. CONCLUSION

For the foregoing reasons, Octa-Pharma's Motion for Summary Judgment is GRANTED, and Graham's claims are DISMISSED WITH PREJUDICE.

**MONROE, LOUISIANA,** this 24th day of March, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE